**HD BROUS & CO., INC., Plaintiff,**

v.

**SYNTHESYS SECURE TECHNOLO-GIES, INC. a/k/a Synthesys Technologies, Inc., Defendant.**

**No. 02CV910(ADS)(WDW).**

United States District Court, E.D. New York.

Nov. 4, 2002.

Lazare Potter Giacovas & Kranjac LLP, by Robert A. Giacovas, Esq., of Counsel, New York, NY, for Plaintiff.

Kluger, Peretz, Kaplan & Berlin, P.A., Miami, FL, for Defendant.

Westerman Ball Ederer Miller & Sharfstein, LLP, by Stuart T. Rebish, Esq., of Counsel, Mineola, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff HD Brous & Company, Inc. ("Brous" or the "plaintiff") alleges that the defendant Synthesys Secure Technologies, Inc. a/k/a Synthesys Technologies, Inc. ("Synthesys" or the "defendant") breached an agreement to pay for investment banking services that Brous provided to it. Synthesys now moves to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and on the ground of *forum non conveniens*. Alternatively, Synthesys moves to transfer venue to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND

The following facts are taken from the complaint unless otherwise noted. Brous is a Delaware corporation with its principal place of business in Great Neck, New York. It provides a full spectrum of financial and investment banking services to companies and individuals. Synthesys is a Florida corporation with its principal place of business in Boca Raton, Florida. It develops and markets software products that prevent identity theft and information security.

On or about June 20, 2001, Synthesys entered into a letter agreement with Brous entitled "Financial Advisory and Investment Banking Agreement" (the "Agreement"). The Agreement provided for Brous to identify and introduce a third-party with whom Synthesys could effect a sale or license of its technology, a joint venture or other relationship. Also, the Agreement provided that upon the completion of an "Eligible Transaction" between Synthesis and a third-party, Synthesys would pay Brous a fee of $60,000 plus additional compensation in the form of stock or fees depending on the type of transaction.

Thereafter, Brous provided Synthesys with analysis and advise that led to a "strategic alliance" with IMSure Network, Inc. ("IMSure"). Brous alleges that the "strategic alliance" was an "Eligible Transaction" under the Agreement triggering Synthesys' obligation to pay Brous $60,000 and 500,000 shares or 5% of its stock. On the other hand, Synthesys claims, among other things, that the IMSure transaction was never completed and refused to compensate Brous for its services.

On February 8, 2002, Brous filed a complaint against Synthesys in the Eastern District of New York. Brous asserts four claims: (1) breach of contract; (2) unjust enrichment; (3) constructive trust; and (4)

quantum meruit. Presently before the Court is a motion by Synthesys to dismiss the complaint for lack of personal jurisdiction and *forum non conveniens,* or in the alternative, to transfer venue to the Southern District of Florida.

## II. DISCUSSION

### A. Personal Jurisdiction

#### 1. The Standard

In responding to a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction exists over the defendant. *Distefano v. Carozzi North America, Inc.,* 286 F.3d 81, 84 (2d Cir.2001). The plaintiff's burden depends on the posture of the case. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999). Without extensive discovery or an evidentiary hearing—as here—the plaintiff need only make a *prima facie* showing that personal jurisdiction exists over the defendant. *Id.See also Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 184 (2d Cir.1998). At this early stage, a court must construe all pleadings and affidavits in the light most favorable to the plaintiff and any doubt must be resolved in favor of the plaintiff. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985) (citations omitted).

In a diversity case—as here—a court exercises personal jurisdiction over a party in accordance with the law of the forum state, subject to the requirements of due process under the United States Constitution. *Whitaker v. Amer. Tele., Inc.,* 261 F.3d 196, 208 (2d Cir.2001). As such, the Court must look to New York's personal jurisdiction statutes, CPLR §§ 301—general—and—302—long-arm—to determine whether Brous has made a *prima facie* showing of personal jurisdiction over Synthesys. If there is jurisdiction under the CPLR, then the Court evaluates whether the exercise of that jurisdiction comports with due process requirements.

#### 2. CPLR § 302

Brous argues that jurisdiction exists under CPLR § 302(a)(1). Jurisdiction is established under Section 302(a)(1) where, (a) the defendant has transacted business within the state; and (b) the claim arises out of that activity. *See Bank Brussels,* 171 F.3d at 787. "Transacting business" under Section 302 requires only a minimal quantity of activity, provided that it is of the right nature and quality and, in making a determination, a court must examine the totality of the defendant's contact with the forum. *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996). Even a "single transaction would be sufficient to fulfill th[e] requirement." *Bank Brussels,* 171 F.3d at 787 (internal quotation marks and citation omitted).

Courts have noted the following factors, among others, as relevant to a determination whether a defendant has transacted business in New York: (1) the existence of a choice-of-law provision in a contract designating New York law to govern disputes between the parties, *CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 366–67 (2d Cir.1986); (2) the defendant's knowledge that services under a contract would be performed in New York, *Nat'l Westminster Bank PLC v. Retirement Care Associates, Inc.,* No. 98–6023, 1999 WL 239677, at *2 (S.D.N.Y. Apr.23, 1999); (3) the defendant's physical presence in New York for the purposes of negotiating a business deal, *Moyers v. Brown,* No. 89–4935, 1990 WL 3183, at *4–5 (S.D.N.Y. Jan. 11, 1990); and (4) the defendant's frequent telephone calls and letters to the plaintiff located in New York over a couple of months, *PDK*

*Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1109 (2d Cir.1997).

Viewing the pleadings and the affidavits in the light most favorable to Brous, the Court finds that the first element—"transacting business" in New York—is met. In particular, the Agreement provides for New York law to govern disputes between the parties. Also, Synthesys contracted with Brous for services that it knew would be performed in New York and were performed there. Further, Peter Letizia the President of Synthesys and a fellow employee John Tabor spent a full day in New York at Brous' offices meeting with investor groups and IMSure employees for the purpose of introducing them to Synthesys' business. Also, introducing Synthesys to potential investors was precisely the purpose of the Agreement. And finally, Synthesys communicated frequently with Brous in New York via e-mail, mail, fax and telephone pursuant to the Agreement.

Synthesys argues that *Gates v. Pinnacle Communications Corp.,* 623 F.Supp. 38 (S.D.N.Y.1985) supports its position that it was not "transacting business" in New York. *Gates* involved allegations of breach of contract and fraud stemming from negotiations to finance and purchase a radio station in Nevada. *Id.* at 39. There, Judge Robert L. Carter of the Southern District of New York held that the defendant's one-hour meeting with the plaintiff at a New York hotel to finalize previously agreed to terms for the sale of the radio station was insufficient to establish the element of "transacting business" in New York. *Id.* at 39–42.

Even if *Gates* was binding precedent, it does not support Synthesys' position. In *Gates,* the only contact with New York was the one-hour meeting, *see id.* at 42, while in the instant case Letizia's and Tabor's full day meeting in New York involved Brous introducing them to IMSure, the party with whom they allegedly formed the "strategic alliance". Further, unlike in *Gates,* where the circumstances surrounding the agreement took place largely outside New York, *see id.* at 41, the Agreement in this case was drafted in New York and contemplated services to be performed there. Also, Synthesys sent frequent e-mail, mail, faxes and made telephone calls to New York pursuant to the Agreement. Finally, unlike in *Gates,* the Agreement here contained a choice-of-law provision requiring New York law to govern disputes between the parties. Based upon the totality of the circumstances, the Court finds that Brous has made a *prima facie* showing that Synthesys transacted business in New York.

■ As to the second element—whether the claim arises from the business transactions in New York—the plaintiff must show that the action is "sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendants to suit in New York." *Hoffritz for Cutlery,* 763 F.2d at 59. The plaintiff need only show "some articulable nexus between the business transacted and the cause of action sued upon." *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 764 (2d Cir.1983) (internal quotation marks and citations omitted). In this case, there is a sufficient nexus between Synthesys' business activities in New York and the instant action because all of the above-noted activities relate either to the formation of the Agreement or to the services that Brous provided pursuant to the Agreement. As such, the second element is met.

■ Finally, the exercise of personal jurisdiction under Section 302 comports with the Due Process Clause of the United States Constitution because—by virtue of its business activities in New York Synthesys "purposefully avail[ed] [itself] of the

privilege of conducting activities" such that it should reasonably anticipate being haled into Court here. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). As such, the exercise of jurisdiction over Synthesys comports with "our traditional conception of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 326, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Accordingly, the motion to dismiss for lack of personal jurisdiction is denied.

## B. *Forum Non Conveniens*

### 1. The Standard

In a *forum non conveniens* analysis, a court must first decide what level of deference to give to a plaintiff's choice of forum. *DiRienzo v. Philip Services Corp.,* 294 F.3d 21, 28 (2d Cir.2002) (citing *Iragorri v. United Technologies Corp.,* 274 F.3d 65, 73 (2d Cir.2001)). After that level is determined, a court must consider whether an adequate alternative forum exists. *Iragorri,* 274 F.3d at 73. If one exists, a court must weigh the relative convenience of the forums by evaluating certain private and public interest factors. *Id.* "[T]he greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing *forum non conveniens* dismissal." *Id.* at 74.

#### a. The Deference Owed to the Plaintiff's Choice of Forum

Recently, the Second Circuit established a "sliding scale" approach to decide the proper deference to give to a plaintiff's choice of forum. *Id.* at 71. Under that scale, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the law-

suit in the United States ... [the greater deference must be accorded plaintiff's choice of a forum and] the more difficult it will be for the defendant to gain dismissal for *forum non conveniens.*" *Id.* at 72.

In this case, Brous filed suit in the forum where it has its principal place of business—the Eastern District of New York. As such, the Court gives this choice of forum a great degree of deference. *See Iragorri,* 274 F.3d at 71 ("[P]laintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum.") (citations omitted); *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 101–102 (2d Cir. 2000) (stating that a plaintiff's choice of forum increases as her ties to the forum increase); *Murray v. British Broad. Corp.,* 81 F.3d 287, 290 (2d Cir.1996) (stating that a domestic plaintiff's choice of forum deserves more deference than a foreign plaintiff's); *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 n. 23, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (indicating that the choice of forum by its citizens and residents deserves greater deference than a stranger's choice); *Koster v. (Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) ("[A] real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.").

#### b. The Alternative Forum

Next, the Court must decide whether an adequate alternative forum exists. "An alternative forum is adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits litigation of the subject matter of the dispute.'" *Alfadda v. Fenn,* 159 F.3d 41, 45 (2d Cir.1998) (citing *Piper,* 454 U.S. at 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419). Synthesys agrees that it is subject to service

of process in Florida and that Brous may litigate the instant dispute there. Also, Florida courts have the power to apply New York law—the governing law in this case. As such, Florida offers an adequate alternative forum.

### c. The Balancing of the Interest Factors

Having decided that an adequate alternative forum exists, the Court must now weigh the public and private interest factors to decide which forum—New York or Florida—is more convenient and serves the interests of justice. *Iragorri*, 274 F.3d at 73. The public interest factors are: (1) settling local disputes in a local forum; (2) avoiding the difficulties of applying foreign law; and (3) avoiding the burden on jurors by having them decide cases that have no impact on their community. *Id.* at 74. The private interest factors are: (1) the relative ease of access to evidence; (2) the cost to transport witnesses to trial; (3) the availability of compulsory process for unwilling witnesses; and (4) other factors that make the trial more expeditious or less expensive. *Id.* at 73–74.

█ None of the public interest factors favor Synthesis. Although Synthesis is a Florida corporation, this fact alone does not make this a Florida dispute considering that Brous drafted the Agreement that forms the basis of this litigation in New York and provided services pursuant to the Agreement in New York. Also, the Court does not have to apply foreign law because New York law governs the dispute. Finally, this case would not burden jurors by having them decide a case that does not impact their community because the plaintiff has its principal place of business in this district.

█ None of the private interest factors favor Synthesys. Here, the dispute revolves around the interpretation of a con-

tract and whether Synthesys breached that contract. At this juncture, the only significant item of documentary evidence appears to be the Agreement. As such, the access to evidence factor does not favor Synthesys. Also, Synthesys will have the ability to compel unwilling witnesses to this Court if it chooses. Further, Synthesys provides the names of six of its employees who allegedly were intimately involved with the events surrounding the dispute and claims that the overwhelming majority of key witnesses are located in South Florida. However, Synthesys does not explain how these witnesses are intimately involved with the dispute and what relevant information that they will offer at trial. It appears that the only key witness on behalf of Synthesys will be Letizia who executed the Agreement and appears to be the only employee, other than Tabor, who dealt with Brous.

Based upon a review of the public and private interest factors in light of the great deference given to Brous' choice of its home forum, the Court finds that Synthesys has failed to show that Florida is a more convenient and just forum than New York. Accordingly, the motion to dismiss on the ground of *forum non conveniens* is denied.

### C. Change of Venue

█ Section 1404(a) provides that a court may transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Under Section 1404(a), a court determines motions for transfer according to an " 'individualized, case-by-case consideration of convenience and fairness.' " *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). The movant bears

the burden of showing that transfer is appropriate. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *overruled on other grounds* by *Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990). Initially, a court must determine whether the action is one that could have been brought in the transferee court. *Mattel, Inc. v. Robarb's, Inc.*, 139 F.Supp.2d 487, 490 (S.D.N.Y.2001). In this case, it is undisputed that Brous could have brought this action in the Southern District of Florida.

Having determined that an alternative venue exists, the Court turns to whether it is appropriate to transfer the case to that venue based upon the "convenience of parties and witnesses" and in the "interest of justice". *Id.* In making this decision, the following factors control: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances. *Id.*

"There is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y.2000) (citations omitted). A court has discretion in balancing the factors. *Id.* (citations omitted). "The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses.... Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." *Viacom Int'l, Inc. v. Melvin Simon*

*Prods., Inc.*, 774 F.Supp. 858, 868 (S.D.N.Y.1991) (citations omitted); *see also Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 988 (E.D.N.Y.1991) ("The convenience of both the party and non-party witnesses is probably considered the single-most important factor in the analysis of whether a transfer should be granted.").

In this case, the Court finds that the transfer of venue to the Southern District of Florida is not appropriate. None of the factors compel transfer of venue. For example, the access to documentary evidence presents no difficulties to Synthesys because of the limited number of documents necessary to resolve this dispute. The Agreement, which is the basis of the dispute, was drafted in New York and the services under the Agreement were provided there. New York law governs the dispute. No one forum is more convenient for all of the party and non-party witnesses because they come from either New York, Florida or Arizona. There is no reason to disturb Brous' choice of its home forum. Accordingly, the motion to transfer venue is denied.

## III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED**, that the motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) is denied; and it is further

**ORDERED**, that the motion to dismiss on the ground of *forum non conveniens* is denied; and it is further

**ORDERED**, that the motion to transfer venue to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) is denied; and it is further

**ORDERED**, that the parties are directed to contact United States Magistrate

Judge William D. Wall immediately to schedule the completion of discovery.

**SO ORDERED.**